# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

PATRICIA A. BEARD,           )
                             )
        Plaintiff,           )
                             )
    v.                       )    Case No. CIV-15-405-RAW-SPS
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of the Social )
Security Administration,     )
                             )
        Defendant.           )

## REPORT AND RECOMMENDATION

The claimant Patricia A. Beard requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born November 8, 1963, and was fifty years old at the time of the administrative hearing (Tr. 44). She completed her GED, and has no past relevant work (Tr. 33, 160). The claimant alleges she has been unable to work since an amended onset date of November 8, 2013, due to bipolar disorder, manic depression, and post-traumatic stress disorder (Tr. 159).

**Procedural History**

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 29, 2012. Her application was denied. ALJ Doug Gabbard, II, held an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 20, 2014 (Tr. 23-34). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she had the nonexertional limitations of being limited to unskilled work, which was defined as work that needs little to no judgment to do simple duties that can be learned on the job in a short periods of time; may only occasionally be required to understand, remember, and complete detailed instructions due to marked

limitations in this area; could not be required to work at production line speeds due to problems with concentration, persistence, and pace; any supervision would have to be simple, direct, concrete, and nonthreatening; she would work best in an environment where she could work alone, and where interpersonal contact with supervisors and co-workers was incidental to the work performed, such as assembly work; and she could only have occasional contact with the public (Tr. 28). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, industrial cleaner/janitor and laundry worker (Tr. 33-34).

## Review

The claimant argues that the ALJ erred by: (i) failing to properly evaluate the opinion of counselor Linda Lewis, and (ii) failing to account for her nonsevere impairments at step four. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly evaluate the evidence in the record with regard to the claimant's limitations, and the decision of the Commissioner should be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of affective disorder and substance abuse disorder by history, as well as the nonsevere impairments of cellulitis, edema, pulmonary fibrosis, hepatitis C, COPD, carpal tunnel syndrome, and right ankle fracture (Tr. 25-26). The relevant medical evidence reflects that the claimant was incarcerated prior to 2012. Mental health treatment records from that time indicate her diagnoses were major depressive disorder, recurrent, severe, with psychosis, in

remission, r/o bipolar/schizophrenia and major depressive disorder, recurrent, severe with psychotic features (Tr. 262, 265577, 615, 703).

Upon her release from incarceration in 2012, the claimant reported to Metrocare Services for mental health treatment, and the psychiatric assessment indicated that she was diagnosed with bipolar I disorder with persistent psychosis (Tr. 398). The claimant also received outpatient mental health treatment with Ms. Linda Lewis through the Chickasaw Nation Health Center, and the claimant's diagnoses included bipolar disorder and PTSD, as well as borderline intellectual functioning (Tr. 425, 452). Treatment notes indicate the claimant admitted to paranoid thoughts and auditory hallucinations (Tr. 425). In conjunction with counseling from Ms. Lewis, Dr. Tessa Manning managed the claimant's medication at the same facility. Dr. Manning's treatment notes indicate the same diagnoses of PTSD and bipolar disorder, and also noted a history of meth/alcohol dependence and a borderline IQ (Tr. 439, 447). Other treatment notes indicate that the claimant denied alcohol use but a family member reported she had been drinking (Tr. 485). Other counseling notes described a couple of sessions where the claimant discussed her anxiety, but had little or no insight into how persistent behavior toward other people resulted in a cycle of rejection (Tr. 489, 500).

On August 10, 2012, a state reviewing physician noted that the claimant had moderate limitations in difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace (Tr. 416). She noted that the claimant "may be somewhat restricted by [symptoms] but would not be wholly compromised in the ability to function in a work setting" (Tr. 418). She then completed a mental RFC assessment,

in which she indicated the claimant was markedly limited in the ability to understand and remember detailed instructions and carry out detailed instructions, and that she had nine other moderate limitations (Tr. 402-403). In her functional capacity assessment, she stated that the claimant is "maximally able to understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting (Tr. 404).

On September 16, 2013, Ms. Lewis completed a Mental Capacity Assessment, in which she indicated that the claimant's diagnoses were bipolar disorder, most recent episode depressed, as well as PTSD (Tr. 1044). She indicated that the claimant had extreme limitations with the abilities to understand, remember, and carry out detailed instructions, as well in a number of areas regarding sustained concentration and persistence. Additionally, she indicated that the claimant would have four or more absences from work per month (Tr. 1044-1045). She further noted a number of marked limitations, including the ability to maintain attention and concentration for extended periods, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Tr. 1044-1045). She indicated that the claimant had borderline intellectual functioning with a very low IQ, accompanied by panic attacks, and they cause her to get confused easily (Tr. 1044). With regard to the ability to maintain employment, Ms. Lewis stated that the claimant's bipolar diagnosis with major depression and PTSD was also accompanied by psychosis and hallucinations that caused unknown fears, and that she would not be able to fully function on a job and

maintain a daily schedule (Tr. 1045). Regarding her ability to interact, Ms. Lewis stated that the claimant's "behavior would be distracting to others and she would have to constantly ask instructions" (Tr. 1045). She noted that the claimant was presently depressed at the time of the evaluation, and that she could be impulsive (Tr. 1046).

In his written opinion, the ALJ summarized part of the medical evidence in the record, as well as the claimant's hearing testimony. He declined, however, to consider evidence prior to the period at issue when formulating the claimant's limitations, and noted she had an "affective disorder" rather than her actual diagnoses in the record of bipolar disorder I with psychotic features, and major depressive disorder. Neither did the ALJ address the claimant's borderline intellectual functioning. The ALJ further described Ms. Lewis as a treating physician and attempted to apply that analysis to her opinion, which he ultimately rejected by assigning it "little weight" (Tr. 31-32). In support, the ALJ found her opinion to be in contrast with repeated evidence that the claimant could maintain good eye contact, which he decided indicated an ability to interact socially (Tr. 32). Then, referring to the analysis for treating physicians, the ALJ noted that Ms. Lewis saw the claimant "only for about one year," she had done little testing, it was not supported by evidence in the record "as discussed above," and it was based on the claimant's reports which he determined were not credible (Tr. 32).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Lewis herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional

effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources," are similar to a treating physician analysis but set out separately and include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, at *4-5; 20 C.F.R. § 404.1527(d). *See also Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted]. Here, the ALJ approached her opinion with the wrong analysis from the outset. Furthermore, his sole initial reason for discrediting Ms. Lewis's opinion was that the claimant demonstrated good eye contact. Instead, the ALJ opted to give "some weight" to the opinion from the state reviewing physician—which predated Ms. Lewis's by over a year—because the doctor is familiar with Social Security regulations, and was consistent with examination records indicating the claimant had good thought processes and no impairment in memory, attention, or

concentration. The specific records cited by the ALJ are the same records described above wherein the claimant's treatment providers were working with her to identify "annoying" behaviors that bothered others and to work to stop ruminative behavior (Tr. 494-495, 500-501). *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984). Because this is a significant misunderstanding with regard to the evidence and directly relates to findings regarding the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

The claimant also argues that the ALJ erred in failing to properly account for her nonsevere impairments of cellulitis, edema, pulmonary fibrosis, hepatitis C, and COPD at steps four and five, and the undersigned Magistrate Judge agrees. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His

-9-

failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Moreover, the ALJ's opinion is devoid of mention, much less analysis, of the claimant's borderline intellectual functioning.

Accordingly, on remand, the ALJ should evaluate *all* the evidence in the record related to both the claimant's physical *and* mental impairments, as well as the combined effects of these impairments, as required by the law and regulations. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is

therefore not supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**